UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGUSTO RAMOS MENDOZA, | No. 1:25-cv-01650-DC-SCR (HC) |
| Petitioner, | |
| v. | ORDER GRANTING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER |
| TODD LYONS, et al., | |
| Respondents. | (Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant in part Petitioner's motion for a temporary restraining order.

## BACKGROUND

**A.     Factual Background**

Petitioner is a citizen of Guatemala. (Doc. No. 1-3 at ¶ 22.) Petitioner states he entered the United States on or about February 8, 2011, though the exact date is unknown. (*Id.*; Doc. No. 5 at 2.) On October 24, 2012, an Immigration Judge ("IJ") ordered Petitioner removed from the United States. (*Id.*; Doc. Nos. 1-3 at ¶ 24.) On that same day, the IJ granted Petitioner's

1   withholding of removal to Guatemala under Article III of the U.N. Convention Against Torture
2   Act ("CAT"). (Doc. Nos. 1-3 at ¶ 24; 5-1 at 6.) The IJ also denied Petitioner's application for
3   asylum. (Doc. No. 5-1 at 6.)
4       On November 20, 2012, Petitioner was released from immigration custody on an Order of
5   Supervision ("OSUP"). (Doc. No. 1-3 at ¶ 24.) Petitioner has complied with the conditions of the
6   OSUP since his release from custody. (*Id.*)
7       On November 24, 2025, Immigration and Customs Enforcement ("ICE") officers detained
8   Petitioner at Sacramento International Airport. (*Id.* at ¶ 25; Doc. No. 5 at 2.) Petitioner was then
9   transferred to the Mesa Verde ICE Processing Center, where he remains detained. (Doc. No. 1-3
10  at ¶ 26.)
11  **B.    Procedural Background**
12      On November 26, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to
13  28 U.S.C. § 2241. (Doc. No. 1.) Petitioner asserts claims for (1) violation of the Fifth Amendment
14  of the U.S. Constitution, Substantive Due Process, relating to the revocation of Petitioner's order
15  of supervision; (2) violation of the Fifth Amendment of the U.S. Constitution, Procedural Due
16  Process, relating to the revocation of Petitioner's order of supervision and the identification of
17  Mexico as Petitioner's country of removal; (3) violation of the Administrative Procedure Act, 5
18  U.S.C. § 706(2)(A), (B), relating to revocation of Petitioner's order of supervision; (4) violation
19  of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), relating to Respondents' arbitrary and
20  capricious actions in revoking Petitioner's order of supervision; (5) violation of the
21  Administrative Procedure Act, 5 U.S.C. § 706(2)(C), relating to Respondents acting in excess of
22  their statutory authority in revoking Petitioner's order of supervision; (6) claim of ultra vires
23  action, relating to Respondents' authority to detain Petitioner; and (7) violation of the *Accardi*[1]
24  Doctrine relating to Respondents' failure to follow their own agency procedures, rules, or
25  instructions. (Doc. No. 1-3 at 10–18.)
26      Also on November 26, 2025, Petitioner filed the pending motion for a temporary
27
28  [1] *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

2

1  restraining order requiring Petitioner's immediate release and enjoining Respondents from
2  removing Petitioner to a third country without providing him notice and an opportunity to assert
3  his fear-based claims for relief from removal. (Doc. No. 2.)
4      On December 1, 2025, Respondents timely filed an opposition to Petitioner's motion for a
5  temporary restraining order. (Doc. No. 5.) On December 3, 2025, Petitioner timely filed a reply.
6  (Doc. No. 6.) On December 4, 2025, the court issued an order enjoining Respondents from
7  removing Petitioner pending resolution of his pending motion for a temporary restraining order.
8  (Doc. No. 7.)

## LEGAL STANDARD

10      Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
11  showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555
12  U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary
13  restraining order is "substantially identical" to the standard for issuing a preliminary injunction.
14  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To
15  obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on
16  the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary
17  relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction
18  is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining
19  order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196,
20  1201 (9th Cir. 2009).
21      A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits
22  submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol*
23  *Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also*
24  *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go
25  to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.
26  Supp. 3d 1177, 1185 (C.D. Cal. 2015).
27  /////
28  /////

# ANALYSIS

**A.     Likelihood of Success on the Merits**

      1.     <u>Petitioner's Re-detention</u>

           a.     *Statutory Framework*

Except in limited circumstances, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( . . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, there is no suggestion by Respondents that Petitioner's removal order became final recently such that Petitioner's removal period is presently ongoing. Rather, the record suggests Petitioner's removal order was considered final as of October 24, 2012, when an IJ ordered Petitioner removed to Guatemala, despite the subsequent withholding of removal. (Doc. No. 1-3 at ¶ 24; 5-1 at 6, 9.) Further, "[i]n general, [d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Where "an alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision . . . ." 8 U.S.C. 1231(a)(3); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."). Here, Petitioner was detained on an unknown date, and released on November 20, 2012, subject to OSUP conditions. (Doc. Nos. 1-3 at ¶ 24; 5-2 at 9.) As a result, Petitioner is no longer subject to detention under § 1231(a)(2). The court therefore considers whether Petitioner's re-detention in November 2025 is lawful under other statutory or regulatory provisions.

/////

4

b.     *Lawfulness of Petitioner's Re-detention*

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13." *Khamba v. Albarran*, No. 1:25-cv-01227-JLT-SKO, 2025 WL 2959276, at *7 (E.D. Cal. Oct. 17, 2025) (citation omitted). These regulations also govern the revocation of a noncitizen's release from custody. *See id.* Respondents invoked both statutes in the Notice of Revocation of Release served on Petitioner on November 24, 2025. (Doc. No. 5-1 at 9.)

Under 8 C.F.R. § 241.4(l)(2), a noncitizen's release may be revoked "to enforce a removal order or to commence removal proceedings against" a noncitizen. 8 C.F.R. § 241.4(l)(2)(iii). Under 8 C.F.R. § 241.13(i)(2), a noncitizen's release may be revoked "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Both regulations require that upon revocation, a noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1).

On the record presently before the court, Petitioner has not shown that ICE failed to comply with the requirement to (1) inform Petitioner of the reasons for the revocation of his release upon revocation and (2) to afford Petitioner an informal interview and opportunity to respond to the reasons for revocation stated in the notification promptly after his return to custody. *See id.* The Notice of Revocation of Release is dated November 24, 2025, which is the date Petitioner states that he was re-detained. (Doc. Nos. 5-1 at 9; 1-3 at ¶ 25.) The Notice of Revocation of Release indicates that Petitioner was re-detained due to changed circumstances such that Petitioner can be "expeditiously removed from the United States." (Doc. No. 5-1 at 9.) Indeed, the Notice of Revocation of Release specifically states that Petitioner's "case is under current review by Mexico for the issuance of a travel document." (*Id.*) The Notice of Revocation of Release also includes a proof of personal service on Petitioner on November 24, 2025, which is signed and dated by an ICE officer, though Petitioner refused to sign the document. (*Id.* at 10.)

5

1    Despite Petitioner's argument to the contrary, it also appears an ICE agent conducted an
2    informal interview, as required by the applicable regulations, with Petitioner on November 26,
3    2025, two days after he was re-detained. (*Id.* at 7.) Petitioner's "Record of
4    Deportable/Inadmissible Alien" contains a narrative, which includes that on November 26, 2025,
5    an ICE officer "interviewed Petitioner in the Spanish language at the Mesa Verde ICE Processing
6    Center in Bakersfield, CA." (*Id.*) In that interview, the ICE officer translated to Spanish and
7    served the Petitioner with a copy of the Notice of Removal to Mexico, which Petitioner refused to
8    sign. (*Id.*) Also in that interview, Petitioner claimed a fear of removal to Mexico, which he
9    confirms in his reply brief. (*Id.*; Doc. No. 6 at 13–14.) Based on Petitioner's assertion of his fear
10   of removal to Mexico, it appears Petitioner likely understood that ICE planned to remove him and
11   that he had a meaningful opportunity to respond during the informal interview on November 26,
12   2025. *Cf. J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *7
13   (E.D. Cal. Nov. 14, 2025) (finding that ICE's attempt to give petitioner notice and an informal
14   interview more than a month after he was detained did not afford petitioner with meaningful
15   notice of or opportunity to respond to the reasons for the revocation of his release); *Khamba*,
16   2025 WL 2959276, at *10 ("Though DHS now asserts that [petitioner's] removal is likely to be
17   secured within the coming weeks as a result of an application for travel documents submitted
18   weeks after his arrest, this justification was not presented to [petitioner] at the time of his arrest
19   on August 29, 2025, but instead was offered *post hoc* in a declaration filed on September 24,
20   2025.").

21   Based on the record, it also appears that "on account of changed circumstances . . . there is
22   a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8
23   C.F.R. § 241.13(i)(2). As noted above, the Notice of Revocation of Release stated Petitioner's
24   "case is under current review by Mexico for the issuance of a travel document." (Doc. No. 5-1 at
25   9.) Two days later, on November 26, 2025, ICE served Petitioner with a Notice of Removal
26   informing him of ICE's intent to remove Petitioner to Mexico and has otherwise represented that
27   DHS has secured Petitioner's travel documents to Mexico. (Doc. Nos. 5-1 at 2, ¶ 9; 12; 5 at 3);
28   *Cf. N.D.N. v. Bondi*, No. 1:25-cv-01587-DAD-CKD, 2025 WL 3251102, at *4 (E.D. Cal. Nov.

21, 2025) (finding respondents did not meet their statutory burden of demonstrating petitioner was likely to be removed where the only evidence in support of that assertion was a conclusory unsworn statement that respondents were seeking a travel document); *J.L.R.P.*, 2025 WL 3190589, at *5 (finding no changed circumstances where respondents did not identify any changed factual circumstance concerning petitioner or any evidence to indicate that Petitioner would likely be removed in the foreseeable future). Though Petitioner has claimed a fear of removal to Mexico and has been referred for a credible fear interview, the court has no information as to the status of that interview. (Doc. No. 5-1 at 2, ¶ 9.) In total, the evidence before the court does not support a finding that there is no "significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2), —especially given that he has received a Notice of Removal to Mexico.

Accordingly, based on the limited record before the court, Petitioner has not shown that ICE failed to satisfy the revocation of release regulations as provided for by 8 C.F.R. §§ 241.13(i) and 241.4(l). Therefore, Petitioner has not met his burden in demonstrating he is likely to succeed on the merits of his claims that Respondents violated the applicable revocation regulations, Petitioner's due process rights, or exceeded their authority when re-detaining Petitioner.[2]

        2.       Third Country Removal

            a.       *Statutory Framework*

Where, as here, an immigration judge issues a final removal order withholding removal to the country identified in removal proceedings, DHS is authorized to remove the noncitizen to an alternative country. 8 C.F.R. 1240.12(d). Removal to countries identified outside of initial removal proceedings are referred to as "third country removals." Notwithstanding DHS's

---

[2] Petitioner also argues that Petitioner's release was not revoked by an ICE Field Office Director, however, the Notice of Revocation of Release is signed by Sergio Albarran, the San Francsico ICE Field Office Director. (Doc. Nos. 1-3 at 13; 5-1 at 9.) Therefore, Petitioner has not shown that an individual without regulatory authority revoked Petitioner's release, and the court rejects this argument. *See* 8 C.F.R. §241.4(l)(2) ("A district director may also revoke release of an alien when . . . in the opinion of the revoking official . . . it is appropriate to enforce a removal order or to commence removal proceedings against an alien . . . ."); *see also Cruz Medina v. Noem*, 794 F.Supp.3d 365, 382 (D. Md. 2025).

1   authority to effectuate third country removals, noncitizens may not be removed to countries

2   where their "life or freedom would be threatened in that country because of the alien's race,

3   religion, nationality, membership in a particular social group, or political opinion," or where "it is

4   more likely than not that [the noncitizen] would be tortured if removed to the proposed country of

5   removal." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. While DHS has the authority to remove a

6   noncitizen to a country not identified in the final removal order, there is no statute or regulation

7   providing a specific procedure to effectuate such a third country removal. *See Aden v. Nielsen*,

8   409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).[3]

9               b.      *Due Process*

10      Petitioner contends that Respondents' attempt to remove Petitioner to Mexico,[4] without

11  providing him a "meaningful opportunity to be heard on his fear-based claims," constitutes a

12  violation of his right to Due Process guaranteed by the Fifth Amendment. (Doc. No. 2-1 at 13–

13  15.)

14      In their opposition, Respondents argue that Petitioner's removal to a third country is

15  "*lawfully permitted* by the extant final order of removal." (Doc. No. 5 at 5.) Accordingly,

16  Respondents contend, DHS merely seeks "to enforce the fully litigated and non-appealable final

17  order based on undisputed immediate changed circumstances." (*Id.*)

18      While it is true that an immigration judge has issued a fully litigated and non-appealable

19  final removal order as to Petitioner, that order only relates to his removal to his native country,

20  Guatemala. (Doc. No. 5-1 at 6, 9.) Thus, Petitioner has not previously had the opportunity to

21  present a fear-based claim for relief from removal to any country other than Guatemala. There is

22  no final order relating to Petitioner's removal to Mexico, or to any other third country.

---

[3] The court engaged in a more thorough analysis of the statutes and policies governing third country removals in its order granting a temporary restraining order in *A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *1–2 (E.D. Cal. Dec. 4, 2025). The court hereby incorporates that analysis by reference in this order.

[4] In the motion for a temporary restraining order, Petitioner alleges that DHS seeks to remove Petitioner to El Salvador, though it appears reference to El Salvador was made in error. (Doc. No. 2-1 at 14.) Respondents allege, and Petitioner's Notice of Removal confirms, that Mexico is the third country that DHS has identified for Petitioner's removal. (Doc. Nos. 5 at 3; 5-1 at 12.)

As noted above, the court is not aware of the status of Petitioner's referral for a credible fear interview. Nonetheless, based on ICE/DHS policy, in the event ICE determines Petitioner lacks a credible fear, he would not be able to challenge that determination before a neutral arbiter. *See A.A.M v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *2 (E.D. Cal. Dec. 4, 2025). Petitioner has therefore shown he is likely to succeed on the merits of his due process claim, given that numerous courts in the Ninth Circuit, including this court, have found that noncitizens have a Due Process right to have their fear-based claims for relief from removal to third countries heard by a neutral adjudicator before the removal can be effectuated. *See A.A.M*, 2025 WL 3485219 at *11 ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator."); *Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sep. 18, 2025) ("On balance, on this record, the Court finds that there is a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal to warrant imposition of an injunction requiring additional process."); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (2019) ("ICE's attempt to remove Petitioner to Somalia without notice, much less an opportunity to be heard, violated petitioner's due process rights.").

Accordingly, the court finds that Petitioner is likely to succeed on the merits of his claim that Respondents' failure to provide Petitioner notice and opportunity to present his fear-based claim for relief from removal to Mexico violates his constitutional right to Due Process.

**B.   Irreparable Harm**

It is well established that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he

9

is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.")

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.      Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case here. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"In cases implicating removal, 'there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (quoting *Nken*, 556 U.S. at 436). Despite any interest the government may have in promptly executing removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health § Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

Finally, that Petitioner has shown a likelihood of success on the merits tips the public interest further in his favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002).

Therefore, the third and fourth *Winter* factors also weigh in favor of granting Petitioner's request for injunctive relief. Because all four *Winter* factors weigh in Petitioner's favor, the court finds that injunctive relief guaranteeing Petitioner's Due Process right to have his fear-based claim for relief from removal to Mexico, or any third country, heard by a neutral adjudicator is warranted.

**D.      The Injunction**

In his motion, Petitioner seeks an order enjoining Respondents from "removing Petitioner from the United States via a third-country deportation without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim[.]" (Doc. No. 2 at 2.) Specifically,

Petitioner seeks an order requiring that Respondents provide Petitioner:

> a minimum of ten (10) days to raise a fear-based claim for protection prior to removal; (2) if Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings; (3) if Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings.

(Doc. No. 2 at 2.) Petitioner's requested relief is identical to that provided in a preliminary injunction in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). *D.V.D.* is a class action relating to a certified class of individuals who DHS has deported or will deport to a third country. *D.V.D.*, 778 F. Supp. 3d at 378. The court in *D.V.D.* found that removing noncitizens to third countries without an opportunity to assert their fear-based claims constituted "a deprivation of procedural due process." *Id.* at 387. The Supreme Court stayed the *D.V.D.* injunction pending appeal (*Dep't of Homeland Sec. v. D.V.D.*, --- U.S. ---, 145 S. Ct. 2153 (2025)), but numerous courts in this district have issued injunctive relief requiring identical, or substantially similar, third-country removal procedures as those articulated in the *D.V.D.* preliminary injunction, and those requested by Petitioner here. *See, e.g., Vaskayan v. Janecka*, No. 5-25-cv-01475-MRA-AS, 2025 WL 2014208, at *9 (C.D. Cal. June 25, 2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *9 (C.D. Cal. Sep. 26, 2025); *Y.T.D.*, 2025 WL 2675670 at *13; *Khan v. Noem*, No. 1:25-cv-014110-EPG-HC, 2025 WL 3089352, at *11 (E.D. Cal. Nov. 5, 2025).

Here, the court will grant injunctive relief deviating from the *D.V.D.* injunction for two reasons. First, because in *D.V.D.*, DHS had not identified the plaintiffs' third removal countries, so the injunction was intended to apply to all *potential* third countries. Petitioner, on the other hand, received actual notice on November 26, 2025 that DHS identified Mexico as the removal country. (Doc. No. 5-1 at 12.) Thus, those provisions of the *D.V.D.* injunction requiring notice of the identified country are not warranted in this injunction.

Second, because as this court discussed at length in *A.A.M.*, the *D.V.D.* court only required that class members be provided the opportunity to *move to reopen* their immigration proceedings

11

to assert a fear-based claim for relief. *See A.A.M.,* 2025 WL 3485219 at *6–7. This motion to reopen is entirely discretionary. *D.V.D.*, 778 F. Supp. 3d at 373 (quoting *Charles v. Garland*, 113 F.4th 20, 23 (1st Cir. 2024)) ("Immigration courts have nearly unfettered 'discretion to decide whether to grant or deny sua sponte reopening.'"). This court, and several others within the Ninth Circuit, have found that Due Process requires that the noncitizen have the opportunity to actually adjudicate his fear-based claim as to the identified country in front of an immigration judge. *See A.A.M.,* 2025 WL 3485219 at *9 ("Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.").

Thus, the court will grant injunctive relief (modified from Petitioner's requested relief) and apply that injunction to third country removal proceedings for Mexico only, and require that Petitioner be afforded the opportunity to have his fear-based claim heard by an immigration judge. *See Brown v. Plata*, 563 U.S. 493, 542 (2011) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible.") (internal citation omitted).

**E.     Bond**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson*, 572 F.3d at 1086 (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen*, 320 F.3d at 919). Petitioner requests that the court not require him to post security because there is no quantifiable harm to Respondents, and due to Petitioner's prolonged detention, he is indigent. (Doc. No. 11 at 23.)

The court finds that no security is required here. Courts regularly waive security in cases

like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above,

1. Petitioner Agusto Ramos Mendoza's motion for temporary restraining order (Doc. No. 2) is GRANTED IN PART as follows:

    a. The court temporarily enjoins respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, from removing Petitioner to Mexico without first allowing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process; and

    b. Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, are temporarily enjoined from removing or deporting Petitioner to a third country, including Mexico, absent further order from this court;

2. Respondents are ORDERED TO SHOW CAUSE no later than **December 11, 2025**, as to why this court should not issue a preliminary injunction on the same terms as this Order. Petitioner may file a response thereto by no later than **December 17, 2025**. Respondents may file a reply to Petitioner's response by no later than **December 19, 2025**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated:   **December 8, 2025**

Dena Coggins
United States District Judge

13